The opinion of the court was delivered by
Valentine, J.:
statement of tie case. This was an action brought by S. M. Couch against the Kansas Stock -Yard Company for negligence as a bailee in permitting the plaintiff’s cattle to be turned out of the defendant’s stock yards, and allowing them to escape. The damages claimed are the necessary expenses in recovering the cattle, and for depreciation in value while gone. The record seems to show among others the following facts: On October 28th, 1872, the plaintiff owned 101 head of young Texas cattle in the Cherokee country. The cattle were stolen from the Cherokee country and taken to Kansas City, Kansas. They were there put into the defendant’s stock yards. The plaintiff telegraphed to one Sturgis to have the cattle recaptured as stolen property. The sheriff of Wyandotte county, on November 3d 1872, by virtue of a criminal warrant against-Fisher and John Doe, and in pursuance of said telegraphic dispatch from the plaintiff to Sturgis, seized said cattle as stolen cattle, and left them with the Kansas Stock -Yard Company as his bailee, he however putting his own locks on the gates of the stock yard in which the cattle were allowed to remain. Afterward, but on that same day, the cattle were turned out of said stock yards by one of the company’s servants. The cattle were taken away by a pretended owner. On the next day, to-wit, November 4th 1872, the sheriff and the plaintiff, Couch, went in .pursuit of the cattle. They found them on the same day. The sheriff took immediate possession of them, and put them into Irwin Brothers’ stock yards where they remained until November 8th 1872, when the sheriff and the plaintiff removed them and again put them into the defendant’s stock yards. There is no pretense that the defendant ever had any connection with the larceny of said cattle. The case was tried before a jury. The jury found a general *614 verdict for the plaintiff, and assessed his damages at $355. A new trial was refosed. The defendant complains of many of the rulings of the court below.

1. Damages. Rule of values.

*615
2. Proper mBtnictions to te given,

*614 It is claimed that, the court below erred in permitting the evidence of the witnesses Smith and Couch to be introduced concerning the condition of the cattle in the Cherokee nation. We are inclined to think the court did err in this respect. It was proper for the plaintiff to show the condition of the cattle at the time they were turned out of the defendant’s stock yards.. And it was also proper for the plaintiff to show any depreciation in their condition or value from that time until they were recovered by the sheriff and plaintiff, as aforesaid. Rut it was not proper .to show their prior condition while they were down in the Cherokee country; for the defendant was not responsible for any depreciation in their condition or value from the time they were stolen up to the time they were put into its possession as the bailee of the sheriff. This evidence evidently tended to mislead the jury. Evidence may often be introduced for the purpose of showing the condition of things at some time prior to the particular time material to the issues in the case. • But when such evidence is introduced it is not introduced merely for the purpose of showing the condition of such things at such prior and immaterial time, but it is introduced as remote evidence tending to show the condition of such things at the particular time material to the issue. The fact that a thing is in a certain condition at one time is some proof that it is in the same condition at some subsequent time. But proof of this kind is usually confined to such things as are not liable to change suddenly or rapidly, and it is generally admissible only where better evidence cannot be obtained. It is always error to allow proof of some immaterial fact simply because such immaterial fact is some proof of some material fact, when such material fact can itself be proved by direct, positive, satisfactory and sufficient evidence. Such immaterial or remote evidence always tends to mislead or confuse the jury. And hence, to admit it is usually erroneous. But the error *615 in admitting it is seldom material. It is perhaps never material if the court at any time gives the jury proper instructions concerning it, or concerning these qutions it is designed to prove. In the present case, for instance, although the plaintiff had ample evidence to show the condition of the cattle while they were in the defendant’s stock yards at Kansas City, and therefore although the evidence showing their condition while they were in the Cherokee country was inadmissible, yet if the court had instructed the jury at any time that such evidence was admitted only for the purpose of showing what their condition was while they were in the defendant’s stock yards the error in admitting the evidence would probably have been immaterial. Even if the court had instructed the jury that the plaintiff could recover for depreciation in the condition or value of the cattle only after they were turned out of the defendant’s stock yards, and not for depreciation before that time, the error would probably have been immaterial. But no such instructions were given. On the contrary, the court gave the following instruction: “If you find for the plaintiff, you will find a verdict for the amount of expenses paid by the plaintiff, the value of his services and his employees hired, the amount of the depreciation of the stock in value, as the evidence shall warrant, and under the pleadings and evidence. If you find for the plaintiff you are warranted in finding the largest amount proved by the evidence, not exceeding the sum of six hundred, dollars.” This was the only instruction given with regard to the measure of the plaintiff’s damages; and under this and the other instructions given the jury found a verdict for the plaintiff for $355 damages. It must be remembered that there were only 101 head of cattle. They were Texas cattle, only yearlings, and two-year-old cattle, with one cow and calf. The highest value put upon the whole lot was only $909. They were out of the defendant’s, stock yards only one day, when they were found and the sheriff took possession of them. The whole expense of recovering them was, under the evidence, at most, only $119; leaving for depreciation in value as found by the jury $236. *616 If this verdict-is correct, these 101 Texas steers and heifers must have depreciated in value very rapidly during the day they were out. This could not be. The damages were excessive. The jury must evidently have taken into consideration the whole depreciation from the time the cattle were stolen in the Cherokee country until they were returned to the defendant’s stock yards after having been recaptured the second time; and this evidence may have been the cause of it.
The judgment of the court below is reversed, and cause remanded for a new trial.
All the Justices concurring.